# IN THE COURT OF APPEALS OF IOWA

No. 23-0774
Filed August 30, 2023

IN THE INTEREST OF B.E. and B.E.,
Minor Children,

T.E., Mother,
        Appellant.

_____

        Appeal from the Iowa District Court for Des Moines County, Emily Dean, District Associate Judge.

        A mother appeals from the termination of her parental rights to her children.
**AFFIRMED.**

        Heidi D. Van Winkle of Van Winkle Law Office, Burlington, for appellant mother.

        Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney General, for appellee State.

        Reyna L. Wilkens of Wilkens Law Office, Fort Madison, attorney and guardian ad litem for minor children.

        Considered by Schumacher, P.J., Badding, J., and Danilson, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2023).

**DANILSON, Senior Judge.**

A mother appeals from the termination of her parental rights to her children, born in 2011 and 2013.[1]  She contends the State failed to prove the grounds for termination cited by the juvenile court, termination was not in the children's best interests, and she should have been granted additional time to work toward reunification.  Upon our review, we affirm.[2]

## I.     Background Facts and Proceedings

This family came to attention of the department of health and human services in 2021 "due to the parents engaging in domestic violence and [being] under the influence of illegal substances" while caring for the children.[3]  The parents have "a lengthy history of engaging in domestic violence with one another."  The mother agreed to a safety plan that she would "abstain from illegal substances" and "not be around" the father "or have the children around [him]."  Within a month, the mother and father were seen together picking up the older child from school, and thereafter, the department was uncertain of the family's whereabouts.  The children were removed from the parents' custody, adjudicated in need of assistance, and placed in family foster care, where they have remained.

From the time the safety plan was in place, concerns were noted about the mother's failure to follow it, including her continued drug use and contact with the father.  The mother's criminal history included various convictions for theft and

---

[1] The mother has seven children, all but one of whom have had department involvement.

[2] The father's parental rights were also terminated.  He does not appeal.

[3] The initial allegations eventually led to a founded child abuse assessment for domestic violence and substance abuse by both parents.

burglary, driving while barred, operating while intoxicated, and drug-related offenses. She was incarcerated and, then, on probation during these proceedings. Meanwhile, the mother maintained "minimal contact" with the department and missed the majority of her scheduled visits with the children.

A permanency hearing was held over two days in February and March 2023. The mother appeared on the first day of the hearing and testified she was in her first month of substance-abuse counseling and was "explor[ing]" mental-health treatment options. The mother was living with the father. She agreed their relationship had issues with domestic violence, but she maintained she was "the aggressor pretty much" and "the substance[s] play a big part in everything between [them]." The mother acknowledged the children had been negatively impacted by her substance use and by witnessing their parents throw and break things and "hit" each other during arguments. But she maintained she was committed to her marriage to the father, explaining, "Not saying that I'm putting him before my kids, but this is, you know, this is what it is." The mother requested an additional six months to work toward reunification with the father "as a family unit to get [the] kids back if the no-contact order was removed."

The second day of the hearing took place two weeks later. The mother did not appear. The caseworker testified the police had been called to the parents' home for domestic incidents three times since the prior hearing. The caseworker noted the mother "felt that there was no point of coming and that her rights were already terminated," and "she didn't want to continue hurting [Be.E.]"[4] The

---

[4] The day prior, Be.E. had been admitted to the emergency room after the foster mother called police upon learning Be.E. "had destroyed the house and started

mother's attorney informed the court that she had communicated with the mother "th[at] morning" and the mother said "she just couldn't keep doing this." The court entered a permanency order directing the State to file a termination-of-parental-rights petition.

The termination hearing was held the following month. The caseworker testified the mother had participated in mental-health counseling, substance-abuse treatment, and drug testing since the permanency hearing. The caseworker further reported that "[t]he last few weeks she has been consistent" with video visits with the children. The mother had moved to a new location separate from the father, but they had "gotten into an altercation" recently in which the mother "got pushed down the stairs, and her ribs were broken." Despite the mother's recent compliance with most of the case plan requirements, the department and guardian ad litem recommended termination of parental rights.

The juvenile court thereafter entered an order terminated the mother's parental rights under Iowa Code section 232.116(1)(f) (2023). She appeals.

## II. **Standard of Review**

Appellate review of termination-of-parental-rights proceedings is de novo. *In re A.B.*, 957 N.W.2d 280, 293 (Iowa 2021). Our paramount concern in termination proceedings is the best interests of the children. *In re L.T.*, 924 N.W.2d 521, 529 (Iowa 2019).

---

heading towards [the parents'] house" to "tell [the mother] he was done with [them]." Be.E. was awaiting placement in "a behavioral health bed."

### III.    Grounds for Termination

The juvenile court terminated the mother's parental rights pursuant to Iowa Code section 232.116(1)(f).   With regard to that section, the mother only challenges the fourth element—whether the children could be returned to her custody.[5]  This element is satisfied when the State establishes the children cannot be safely returned to the parent at the time of the termination hearing.  *In re T.W.*, No. 20-0145, 2020 WL 1881115, at *2–3 (Iowa Ct. App. Apr. 15, 2020).

True, the mother engaged in services in the nearly two-month timeframe between the permanency and termination hearings.  But prior to that, months passed during which the department "had no contact information" for her.  Meanwhile, she continued to use illegal substances, missed visits with the children, and engaged in domestic violence with the father.  Despite the mother's recent bout of progress, the caseworker voiced concern about the "longevity of her cooperating with services and her ability to stay engaged with the services."  The caseworker also noted the mother had not "attended in-person visits due to [the department's] discretion, and that would limit her ability to care for the children long

---

[5] The mother also makes a passing remark that the department "failed to provide reasonable efforts to assist in this reunification."  The mother neither specifies what services the department failed to provide, nor did she raise an objection to services prior to this appeal.  *See In re C.B.*, 611 N.W.2d 489, 493–94 (Iowa 2000) ("We have repeatedly emphasized the importance for a parent to object to services early in the process so appropriate changes can be made.").  Indeed, the juvenile court noted, "Neither the children nor their parents have requested additional or more intensive services."  Because the mother failed to "demand other, different, or additional services prior to a permanency or termination hearing," *see In re A.A.G.*, 708 N.W.2d 85, 91 (Iowa Ct. App. 2005), "error is not preserved for our review," *see In re M.M.*, No. 20-1213, 2020 WL 7022398, at *2 (Iowa Ct. App. Nov. 30, 2020); *A.A.G.*, 708 N.W.2d at 91 (concluding parent failed to preserve reasonable-efforts challenge by failing to request different or additional services before the permanency hearing).

term" because "she hasn't shown the longevity of taking care of the kids." Given the mother's track record during this case, we find the caseworker's apprehension well-founded.

There were also continuing concerns about the mother's pattern of violating the no-contact order, police involvement, and criminal charges. The children both expressed fear of being exposed to further violence between the parents. The guardian ad litem stated, "[The parents] have a very lengthy history of domestic violence in their relationship, which unfortunately has trickled down to their children." And the caseworker opined, "[D]omestic violence could still occur between them two if they still have contact outside of living in the same residence." We also note the mother's lengthy history of substance use, starting at age sixteen, and the short length of her most recent period of sobriety, and we concur with caseworker's concern about the mother's "overall ability to take care of the kids if she goes back to using illegal substances." Under these facts and circumstances, we conclude the children could not be safely returned to the mother's custody at the time of the termination hearing. Iowa Code section 232.116(1)(f) was satisfied.

## IV.    *Best Interests*

Termination also must serve the children's best interests. *See* Iowa Code § 232.116(2). As the guardian ad litem stated, "The children are bonded to their parents, but realize and understand that it is not a safe or healthy environment for them to live in nor do they desire to live in such environment any longer." We concur the children "deserve permanency and an opportunity to be raised in safe and stable home free of drugs and domestic abuse." Upon our review, we conclude termination is in the children's best interests.

*V.     Additional Time*

Finally, the mother challenges the court's denial of her request for a six-month extension to work toward reunification.  Iowa Code section 232.104(2)(b) allows the court to continue the children's placement for six months if doing so will eliminate the need for removal.  Before continuing a placement, the court must "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period."  Iowa Code § 232.104(2)(b).

Clear and convincing evidence shows that continuing the children's placement for six months would not eliminate the need for the children's removal.  As the guardian ad litem noted, "The crux of this case hinges on substance abuse, mental health, and domestic violence issues with [the parents]"; "[t]here is a difference between checking the box or list of services outlined in the court's order and taking accountability for the reasons that brought the children to the court's attention and remedying the adjudicatory harms as identified by the court."  The mother's recent "efforts are simply too late.  The changes in the two or three months before the termination hearing, in light of the preceding [thirteen] months, are insufficient."  *See C.B.*, 611 N.W.2d at 495.  Over one year passed between the children's adjudication and the termination order, and very little changed.  There is no reason to believe that six more months would lead to a different outcome.  *See In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014) ("[W]e cannot deprive a child of permanency after the State has proved a ground for termination under

section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." (citation omitted)).

The mother acknowledged, "I'm at that age where I'm too old for this," and "[m]y kids [are] old enough now where they understand." We commend the mother's realization regarding the impact her actions have on the children, but the children deserve stability now. The mother "needed to begin her efforts to pull her life together and resume care for her children much earlier." *See C.B.*, 611 N.W.2d at 495; *In re L.L.*, 459 N.W.2d 489, 495 (Iowa 1990) ("Parenting cannot be turned off and on like a spigot. It must be constant, responsible, and reliable."). Because there is no basis for finding the need for removal will no longer exist in six months, we deny the mother's request for additional time.

We affirm the termination of the mother's parental rights.

**AFFIRMED.**